Next case is People v. Hemingway and for the appellant Ms. Ware and for the affiliate Ms. Sheppard-Hemingway. Thank you, your honor. May I please report? My name is Jessica Hammond Ware. I'm the head of the Office of the State Appellate Defender and I represent the appellant, Mr. Hemingway. Your honors, I'd like to focus my argument today on the first argument in my brief regarding the failure to call Tiffany Steele as a witness. And if the court has any questions about the second issue raised in my brief, I'd be happy to answer those as well. Your honors, an uncorroborated alibi is virtually useless. The case law has said that where a defendant's alibi is uncorroborated and there is an available witness to corroborate the testimony, and counsel fails to present that testimony, that counsel is deficient. And in this case, we have Kevin Hemingway testifying at trial that at the time of the robbery, he was at his friend Carl Herrera's house. There was no evidence at trial presented by counsel to corroborate that. But in Mr. Hemingway's PC, he attaches an affidavit from Tiffany Steele who says that she was at trial ready and willing to testify that indeed Kevin Hemingway was at Carl Herrera's house at the time of the robbery, and that she told counsel of her testimony, but counsel failed to call her as a witness. Your honors, Hemingway's petition made out an arguable claim of ineffective assistance of counsel for failing to call Steele as a witness. But yet the trial court summarily dismissed the petition on the erroneous belief that Tiffany Steele's affidavit was contradictory to Kevin Hemingway's testimony, when in fact it corroborated it to a T. Tiffany Steele was able to say that he was at Carl Herrera's house, that it was Hemingway's day off, that Hemingway was outside for a portion of time, that Hemingway's girlfriend Letitia was there also, that Hemingway was waiting for Vogel to pick him up, and that when Hemingway left, he left with Letitia, Vogel, and I'm sorry, when Hemingway left, he left with Letitia and Vogel. Tiffany Steele's affidavit corroborates all of that. The fact that she gave additional details as to who Hemingway talked to while he was on the porch does not make her affidavit contradictory, because Hemingway was never asked those specific questions at trial. He was never asked, when you stepped out onto the porch, did you see anybody, did you speak to anybody? Counsel didn't ask those questions, and so Hemingway is at trial answering the questions that are asked. Now had he been asked, did you speak to Steele and Derrick Green and Anthony while you were on the porch, and he said no, that would make his testimony contradictory to her affidavit, but as we have them now, they can be, those two versions can be incorporated seamlessly. And here the court dismissed it because it felt that because Hemingway did not mention that he spoke to people while he was on the porch, that the two versions contradicted each other. But this is not a case like the cases at the state sites where the court found a trial strategy not to present the alibi witnesses because their testimony would have contradicted the defense's theory. Those cases are completely distinguishable. If you look at People v. Deloney and People v. Jones that are cited in the brief, in People v. Deloney, the alibi witness testimony would have placed the defendant at his grandmother's house at the time of the shooting, whereas the defendant's statement that he relied on at trial was that he was driving a red LeBaron at the time of the offense. And so those are two different locations. Those two versions do contradict each other. And in People v. Jones, it's the same thing. The alibi witness testimony was two brothers, and their testimony would have placed the defendant at their house with them. And the defense's alibi at trial, put on by the defendant's mother, was that the defendant was at his own house. And so in those two cases, those were two contradictory versions, and the court found that that was trial strategy. But here, Tiffany Steele's affidavit places Hemingway exactly where he says that he was, and that's at Carl Herrera's house. And her affidavit provides a critical piece of evidence that Hemingway was unable to provide at trial. Did you include the affidavit in an appendix to your brief? The affidavit is a part of the record, but I don't have it in an appendix. I have it at my desk, though. It's part of the record. You referred to it as an affidavit, but was it notarized? Correct. It wasn't properly notarized. It's signed. It has the notary stamp on it, but there is no notary signature on it. And what about signed and sworn to before? No, that's not on the affidavit. So is it an affidavit, I guess is the question. Yes, it is. The public court has decided in People v. Parker, People v. Wilborn, that at the first stage, that the trial court should not dismiss a first-stage petition for technicality like a lack of proper notarization. Of the petition itself, right? No, of an evidentiary affidavit like Tiffany Steele's. Parker stands for that? Yes, Parker and People v. Wilborn. Now is there any contrary or other authority? Yes, People v. Gardner. But the issue right now, as I cited in my motion to cite additional authority, is pending before the Supreme Court in People v. Allen. The defendant's petition for legal appeal was taken in People v. Allen. In People v. Allen, was there but a single issue on appeal? Yes, the petition for legal appeal raises a single issue, and that's the notarization issue. So that issue will be addressed by the Supreme Court in People v. Allen, because that's the only issue before the court. Notarization of an evidentiary affidavit? Yes, the same situation that we have here. But we ask this court to follow Parker and Wilborn. Very well-reasoned cases that say that the lack of a notarization does not go to the substance of the claim. And at the first stage of the proceedings, as People v. Homerson's recent Supreme Court case has said, that the court should only look to the substantive virtue of the petition, not procedural compliance. So what about Collins, though, the Supreme Court case? Right, Collins says that a petition can be summarily dismissed for a lack of an evidentiary affidavit. But here we have the affidavit. It's just not properly notarized. And the concerns here are different. Everybody knew who Tiffany Steele was. Her identity was known. The statement is signed. She was at trial. Defense counsel was aware of her. Defense counsel spoke to the judge about her. Everyone knew who she was. And they knew she was present at trial. And so we have her statement. We have it signed in the record. And as Parker and Wilborn have stated, the lack of a notarization is a technicality that can be easily remedied at the second stage when an attorney is appointed that can arrange for notarization. But what we should look to is the substance of Mr. Hemingway's claim here.  We don't know that. Counsel had her present in court, and counsel did not call her. Now, my argument is that that's not a strategic decision when defendant has no evidence to corroborate his alibi. She had testimony that would corroborate his alibi, and there was nothing else. So there's nothing on the record that indicates that this was a strategic decision. You know, counsel didn't say anything on the record to indicate that she would have been a bad witness or that there were problems with her testimony or anything like that. All we know is she was there and she was not called. As I stated, Steele's testimony would have placed Hemingway exactly where he said that he was, and it would have also provided a missing piece to Hemingway's testimony, because Hemingway was asked at trial about the time frame. What time did you wake up and what time did you leave Herrera's house? And he didn't look at a watch, so he didn't know the exact time. He knew it was generally morning time. Well, Steele's testimony would have put a time frame to that, because she would have been able to say that Hemingway did not leave Herrera's house until 1103, because that's the time where she received a text from her mother, and that she left Herrera's house to go home at 1103. And she says when she was going home, they were leaving as well. So that would have placed Hemingway at Herrera's at the proper time frame to fit the alibi, because the armed robbery occurred between 1050 and 1054, and her testimony places Hemingway at Herrera's between 1023 and 1103. So her testimony was critical, but counsel did not call her, and the defendant's argument regarding her testimony is not rebutted anyway by the record. In fact, it's supported by the record, because she was listed as a defense witness. So her claim that I told counsel that I could testify and that I'm ready and willing, that's supported by the record, because defense counsel listed her as a defense witness. And all of those people that she said were outside that saw Hemingway, Derrick Green, Anthony, all those people were also listed by defense counsel in the defense's answer to discovery. So this information was known to counsel. Doesn't the statute require that at the time the petition is filed, it's supported by affidavits or the record or other documents? Yes, and at the time... So I mean, if we say here, well, it's not an affidavit because it's not notarized, it's not sworn to, and it's an evidentiary supporting affidavit, aren't we just disregarding the statute? No, I don't believe so, because this is a document that if it is not in proper form, okay, this is a first stage PC written by a pro se client. If something is not in the proper form, it can easily be remedied at the second stage. Now, the affidavit itself has all the facts. It has a signature. It has a notary stamp, but there is a defect. And the cases have said that technicalities like that don't go to the substance of the claims. And so those are not proper basis to summarily dismiss a pro se client's petition based on a technicality. That would contradict the purpose of the Post-Conviction Hearing Act itself to summarily dismiss claims just because of technicalities. Your Honors, Hemingway's alibi was virtually useless without corroboration. Counsel had a witness that was present that could have corroborated his alibi, and Hemingway was arguably prejudiced under these circumstances. Here we have a case where the jury struggled with the verdict. They did not come back immediately and find Mr. Hemingway guilty. They deliberated for hours. They sent out requests to see the evidence again. You know, this was not a case where it was an open and shut case. And if you look at the evidence that the jury asked to see a second time, the two pieces of evidence that they asked to see was defendant's testimony and defendant's statement. So defendant's statement was of importance to the jury, and we don't know if the defendant's statement had been corroborated by another witness's testimony, how that would have tipped the scale in this case. And under Strickland, all Hemingway needs to show is that there's a reasonable probability of a different outcome here. He doesn't have to show that it's likely that a different outcome would have occurred. All he has to show is that there's a reasonable probability. And the case law has defined that as it could be less than 50%. And so here at a first stage PC, where Hemingway just has to show that it's arguable that there's a reasonable probability of less than 50% that this could have affected the outcome, we'd argue that he made an arguable claim of ineffective assistance of counsel under these circumstances, Your Honor. And if the court has no further questions. Thank you. Thank you. We'll have just one more time on rebuttals. Thank you. Ms. Shepard. May it please the court, counsel. Of course, the state argued, and the record clearly shows that Steele's affidavit was not an affidavit. It was merely a statement that was not notarized and cannot be considered under the Post-Conviction Hearing Act. It does not comply with Section 122-2. The Supreme Court in Collins was very clear that lack of compliance, even at first stage, with Section 122-2 warrants dismissal on that ground alone. And the Supreme Court later reaffirmed that in Hodges when it said that first stage petitioner, even though Hodges announced somewhat more lenient standards for judging a first stage petition, a first stage petitioner still has to comply with Section 122-2. And the court cited Collins in support of that. So here we don't have a notarized statement. It's not an affidavit. It does not meet the requirements of Section 122-2. And as the court correctly held in Gardner, that is a basis alone for dismissing the petition. And opposing counsel relies heavily on Wilborn and Parker. And Wilborn and Parker were incorrectly decided because they relied on a decision in Henderson which construed the verification affidavit requirement, which as the court knows since the Supreme Court in Homerson has since held that's distinguishable from the evidentiary affidavit that's required by Section 122-2. And for the verification affidavit, we're not going to dismiss a first stage petition for lack of a proper verification affidavit. So Henderson concerned a different section of the Act, the verification affidavit requirement. And Wilborn and Parker relied on Henderson even though, well let's see, Wilborn relied on Henderson and Parker simply relied on Wilborn, even though those cases, Wilborn and Parker, dealt with what we have here with Section 122-2. So of course the opposing counsel filed the motion to cite Allen and the leave in Allen as additional authority. We objected to that because of course Allen is unpublished and neither that decision nor the Supreme Court's decision granting leave are precedential. But to the extent that the Supreme Court's order indicates that this issue may be before the Supreme Court, again there were other issues in Allen and the unpublished decision, then that's worth knowing. If this court decides to weigh in on the issue, of course the state would argue that it should rule in compliance with Supreme Court precedent and Gardner and all the correctly decided authority, which wouldn't include Wilborn and Parker. Counsel, Ms. Shepard, I'm sorry. Yes, certainly. Assume that we agree with you that the document here wasn't an affidavit, as an affidavit is construed to be in terms of what its essential elements are. 122-2 refers to an affidavit, record, or evidence supporting the allegations of the petition. Is there any case authority that would allow the document here, what we would assume in this hypothetical affidavit, to be considered other evidence supporting the allegations? Not that I know of, Your Honor, and I've looked at a lot of these cases and frankly there is a decision that comes to mind and I can't remember whether it was unpublished or published. But I remember in that decision the court made the point that if we're going to look at this as an unnotarized statement as an affidavit and put it under the category of other evidence, as Section 122-2 states, we would virtually be reading that requirement out of the statute. Then we could let in anything. The other evidence portion of 122-2, the cases that discuss that, by example do they define other evidence? Is it typically grand jury testimony? What are some of the examples of what constitutes other evidence that would be permissible supporting evidence? Frankly, I'm not familiar with other cases that would construe that, that find things other than records. They have to be reliable in some way. They have to be something that has imprimatur of being admitted, perhaps in court. But there are a lot of cases out there that do construe what is at issue in this case, of course, and they find that this does not qualify as evidence under 122-2. In addition, the state would argue that even if this court were to somehow find a way of construing or looking at considering Steele's statement, it does not support defendant's defense. The defendant told three different stories about what happened that day. When he testified, he testified on both direct and cross-examination about what happened that morning. He was asked many times on cross-examination, okay, you say it was in the morning that this happened, when in the morning, and he wouldn't be pinned down on when these things occurred. And all he said on direct and cross-examination was that, I woke up at Carl Herrera's house, I called Charlie Vogel, I got dressed, I went outside and smoked a cigarette, and I was on the porch when Vogel arrived to pick me up. And then he testified, he went inside, awakened Tisha Williams, she got dressed, and she and defendant Vogel went in Vogel's car to Sprint and elsewhere. So he never said anything about these people that Steele discussed in her affidavit, I'm sorry, in her statement. And Steele said, not just that there were these other people there, but she said, yeah, I talked to defendant, my boyfriend talked to defendant, my boyfriend's cousin talked to defendant. And so that is so different from what defendant testified to. It's also different from his first alibi that he gave to Sergeant Rain, where he said he was at Williams' house and did all sorts of other things. It's also obviously contrary to his second version where he confessed to the offense in a videotape statement that the jury saw. And it's important to remember that defense counsel knew about Steele. She had her on the defense witness list. As I recall, there were only two witnesses on the defense witness list, and one of them was Steele. There were not all these other people. But regardless, she clearly knew, defense counsel knew, about what Steele was going to say. And it was only after defendant exercised his right, which is his right, and can't be limited by counsel, of course, to testify. So as soon as he made that decision, that was when defense counsel said, Your Honor, I was going to call these defense witnesses, but I've decided not to. And that's why Steele was not called. So if she had been called, of course, she would have provided a fourth version of what happened that morning, would have further undermined defendant's already severely damaged credibility, and it certainly would not have made a dent in the overwhelming evidence against defendant. Defendant chose to rob this poor woman in the McDonald's parking lot in broad daylight at lunchtime when there were a lot of people around. He was identified by the victim's son, who was working in the McDonald's that day, working the window, and was very intent on watching his defendant and his mother. She was identified by a victim, I'm sorry, by a customer who was in the drive-through who paid special attention to the whole incident because she had her young daughter in the car, she was concerned for the daughter's safety. And she was identified also by the victim when the victim pointed to him in the courtroom and said, This kid, the one over there, said, Hand me your money. And she did later qualify that by candidly admitting that she couldn't be 100% sure that defendant was the robber, but she testified the reason she couldn't was because the robber didn't have glasses or braided hair, as defendant did, which of course those are things that defendant could have changed after the offense, and also because the robber had something over his mouth. And defendant confessed and gave a detailed confession in which he even demonstrated how he held the gun and what he said during the offense. There were also witnesses who described activity by people before and after the offense in the area that clearly the jury could infer from that testimony that that was defendant. And in fact, defendant was found with $1,900 cash in his pockets when he was arrested. The cash was not in his wallet, which was empty, but was bundled in rubber bands, just like the money from the McDonald's deposit was bundled. And it included $123 in $1 bills. And defendant testified that he was basically, well, some of the evidence, I'm not sure if it was in the testimony, but the evidence showed that defendant was basically homeless, and he did testify that he had a minimum wage job, he earned $8.50 at a restaurant, $8.50 an hour. And that was all the money that he had in the world, but it was his money, it wasn't the McDonald's money. And so that was also evidence against defendant. So the evidence against him was truly overwhelming. Even if Steele had testified, and again, it would have hurt defendant, certainly not helped him, if she had testified.  It wouldn't have made a difference. It's not arguable that counsel was ineffective. It's not arguable that counsel's conduct in not calling her was objectively unreasonable or prejudicial. And the record shows that it was a strategic decision. So unless the court has any further questions, I'll simply ask you to affirm. Thank you. Paul? Thank you, Your Honor. I just want to mention a couple of things. Counsel mentioned that there were other issues that were pending before the Supreme Court in Allen. While there was another issue that was pending before the appellate court in Allen, which was a fines and fees issue, that issue is not raised in the petition for leave to appeal to the Supreme Court. The brief has been filed. I have a copy of it. The only issue raised before the Supreme Court in Allen is the notary issue. Do you think they took that case because of the split between the second and the first districts on this issue? Possibly, yes. And the PLA that was taken was the defendant's PLA in that case. I also want to clarify something. Counsel mentioned that Anthony Brown and Derek Green, who were mentioned in Steele's affidavit, were not listed as defense witnesses. If you take a look at page C-152 of the record, it lists Steele, Anthony Brown, Derek Green, Leticia Williams. They are all listed by defense counsel as potential defense witnesses. Also, counsel mentioned that a defendant during his testimony didn't know the time frame that he was at Herrera's house and things of that nature. And that is exactly why Steele's testimony would have been critical, because not only would she have corroborated that he was at Herrera's, but she could have provided that missing link, the time frame. And the time frame that she could have provided was the exact time frame during which the robbery was occurring. So that makes her testimony even more critical in this situation. And also, the statement counts all the evidence that was presented before the jury. But we have to look at the jury here. They were not overwhelmed. They were not overwhelmed by this evidence. They deliberated for hours and hours and hours. And what they were stuck on was defendant's testimony. They asked to see it. They wanted to comb through it, obviously, with a fine-tooth comb. They asked to see the confession. They asked for the trial testimony. And so that's what was of importance to them amidst all this evidence. What they were stuck on was defendant's testimony. And here, defendant's testimony was uncorroborated. And we don't know, had it been corroborated, if it would have given it enough weight to have made a difference to the jury in the situation when the jury already thought that his testimony was important. And lastly, I just want to remind the Court that the threshold here is very low at the first stage of a post-conviction petition. The Court is to look at the petition with a lenient eye and even allow, as Hodges said, borderline cases to proceed. And so, Your Honors, we ask that this Court will reverse the summary dismissal of Mr. Hemingway's petition for those reasons. Thank you, Counsel. We'll take this matter under advisement. Stand in recess until the readiness of the last case of the day.